IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

GRANT F. SMITH,                                )
                                               )
                                               )
                        Plaintiff,             )
                                               )
            v.                                 )        Case No. 1:16-cv-01610-TSC
                                               )
UNITED STATES OF AMERICA, *et al.*,            )
                                               )
                       Defendants.             )
_____)


**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 1

I.      THE COURT SHOULD DISMISS PLAINTIFF'S FIRST CLAIM ................................ 1

        A.      Plaintiff Lacks Standing To Raise His First Claim .................................................. 1

        B.      Plaintiff's First Claim Fails To State A Claim Upon Which Relief May Be
                Granted .................................................................................................................. 3

        C.      The Political Question Doctrine Bars Plaintiff's First Claim ................................. 7

II.     THE COURT SHOULD DISMISS PLAINTIFF'S SECOND CLAIM ............................ 9

        A.      Plaintiff Lacks Standing To Challenge The Classification Bulletin ...................... 9

        B.      The Classification Bulletin Is Not Final Agency Action Or Ripe For
                Review, And Plaintiff Has An Adequate Remedy Under FOIA .......................... 10

        C.      Plaintiff's Challenge To The Classification Bulletin Fails To State A
                Claim Upon Which Relief May Be Granted ........................................................ 12

CONCLUSION .............................................................................................................. 15

# TABLE OF AUTHORITIES

**CASES**

*Aerotrade, Inc. v. Agency for Int'l Dev.*,
  387 F. Supp. 974 (D.D.C. 1974) ................................................................. 6

*Am. Mining Cong. v. Mine Safety & Health Admin.*,
  995 F.2d 1106 (D.C. Cir. 1993) ................................................................. 13

*Baker v. Carr*,
  369 U.S. 186 (1962) ................................................................................. 7, 8

*Bennett v. Spear*,
  520 U.S. 154 (1997) ................................................................................. 10

*Blum v. Yaretsky*,
  457 U.S. 991 (1982) ................................................................................. 2

*Brennan v. Ace Hardware Corp.*,
  495 F.2d 368 (8th Cir. 1974) ................................................................... 15

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
  467 U.S. 837 (1984) ................................................................................. 11

*Common Cause v. Fed. Election Comm'n*,
  108 F.3d 413 (D.C. Cir. 1997) ................................................................. 10

*Cooper v. Farmers New Century Ins. Co.*,
  607 F. Supp. 2d 175 (D.D.C. 2009) ......................................................... 9

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) ............................................................................. 2, 3

*Dalton v. Specter*,
  511 U.S. 462 (1994) ................................................................................. 4

*Davis v. Fed. Election Comm'n*,
  554 U.S. 724 (2008) ................................................................................. 2

*DRG Funding Corp. v. Sec'y of Hous. & Urban Dev.*,
  76 F.3d 1212 (D.C. Cir. 1996) ................................................................. 11

*Erringer v. Thompson,*
371 F.3d 625 (9th Cir. 2004) ........................................................................................ 14

*\*Feinman v. FBI,*
713 F. Supp. 2d 70 (D.D.C. 2010) ................................................................................ 11

*\*Franklin v. Massachusetts,*
505 U.S. 788 (1992) ........................................................................................................ 4

*Gatter v. Nimmo,*
672 F.2d 343 (3d Cir. 1982) .......................................................................................... 15

*Hopkins v. Women's Div., Gen. Bd. of Global Ministries,*
238 F. Supp. 2d 174 (D.D.C. 2002) ................................................................................ 9

*Larson v. Dep't of State,*
565 F.3d 857 (D.C. Cir. 2009) ...................................................................................... 14

*Levine v. Farley,*
107 F.2d 186 (D.C. Cir. 1939) ........................................................................................ 6

*Lewis v. Casey,*
518 U.S. 343 (1996) ........................................................................................................ 2

*\*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ................................................................................................... 1, 2

*\*Lujan v. Nat'l Wildlife Fed'n,*
497 U.S. 871 (1990) ...................................................................................................... 11

*Nat'l Mining Ass'n v. McCarthy,*
758 F.3d 243 (D.C. Cir. 2014) ................................................................................ 13, 14

*Professionals & Patients for Customized Care v. Shalala,*
56 F.3d 592 (5th Cir. 1995) ........................................................................................... 15

*Russello v. United States,*
464 U.S. 16 (1983) .......................................................................................................... 6

*\*Sanchez-Espinoza v. Reagan,*
770 F.2d 202 (D.C. Cir. 1985) ........................................................................................ 8

*Schweiker v. Hansen,*
450 U.S. 785 (1981) ...................................................................................................... 15

*Simon v. E. Ky. Welfare Rights Org.*,
   426 U.S. 26 (1976) ................................................................................................ 10

*Splane v. West*,
   216 F.3d 1058 (Fed. Cir. 2000) ............................................................................ 14

*Syncor Int'l Corp. v. Shalala*,
   127 F.3d 90 (D.C. Cir. 1997) ......................................................................... 11, 13

*Texas v. United States*,
   809 F.3d 134 (5th Cir. 2015) ............................................................................. 4, 8

*Texas v. United States*,
   86 F. Supp. 3d 591 (S.D. Tex. 2015) ...................................................................... 4

*Youngstown Sheet & Tube Co. v. Sawyer*,
   343 U.S. 579 (1952) ........................................................................................... 6, 7

*Youngstown Sheet & Tube Co. v. Sawyer*,
   103 F. Supp. 569 (D.D.C. 1952) ............................................................................. 6

## STATUTES

5 U.S.C. § 553 ......................................................................................................... 13

5 U.S.C. § 706 .................................................................................................... 4, 12

22 U.S.C. § 2753 ...................................................................................................... 6

22 U.S.C. § 2799aa-1 ...................................................................................... passim

## REGULATIONS

32 C.F.R. § 2001.15 ................................................................................................ 11

## OTHER AUTHORITIES

Exec. Order No. 13526, 75 Fed. Reg. 707 (Jan. 5, 2010) ........................... 11, 12, 13, 14

H.R. Rep. No. 103-482, *reprinted in* 1994 U.S.C.C.A.N. 398 ...................................... 5

**INTRODUCTION**

Plaintiff seeks to challenge the Government's provision of foreign aid to Israel, as well as internal guidance for government employees on the protection of sensitive national security information about that subject.  Plaintiff's suit fails at the threshold for numerous, independent reasons, which defendants set forth in their motion to dismiss.  In response to defendants' motion, plaintiff merely repeats the allegations in his complaint, largely without addressing defendants' legal arguments.  But there is no doubt that the Court lacks jurisdiction over plaintiff's claims and that those claims are otherwise not legally cognizable for many reasons. This case, therefore, should be dismissed.

**ARGUMENT**

**I.     THE COURT SHOULD DISMISS PLAINTIFF'S FIRST CLAIM**

**A.     Plaintiff Lacks Standing To Raise His First Claim**

Plaintiff's first claim asserts that each President in office since 1978 should have made a determination that Israel engaged in conduct specified in 22 U.S.C. § 2799aa-1 and that the Secretaries of Defense and the Treasury, in turn, should not have transferred foreign aid to Israel. In their opening brief, defendants demonstrated that plaintiff lacks standing to assert this claim because he has not alleged any particularized injury stemming from the President's failure to make a determination under § 2799aa-1 or from the Government's provision of foreign assistance to Israel.  *See* Mem. in Supp. of Defs.' Mot. to Dismiss ("Defs.' MTD") at 11-13, ECF No. 19-1.  Plaintiff instead asserts only generalized grievances that he shares with "all Americans."  Am. Compl. ¶ 72.  Moreover, even if plaintiff had alleged a particularized injury related to this claim, he cannot establish causation or redressability because of the involvement of "independent actors" whose conduct the court "cannot presume either to control or to predict,"

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992), and because the President has authority to continue providing foreign aid to Israel notwithstanding any determination that Israel has engaged in conduct specified in § 2799aa-1(a)(1) and/or (b)(1), *see* 22 U.S.C. § 2799aa-1(a)(2), (b)(4)-(6).  For these reasons, courts have repeatedly dismissed claims brought under similar foreign aid provisions for lack of standing.  *See* Defs.' MTD at 13-16 (citing cases).

Contrary to plaintiff's assertion, he cannot establish standing for his first claim by pointing to alleged informational injuries that he has purportedly suffered as a result of the Government's responses to his Freedom of Information Act ("FOIA") requests.  *See* Pl.'s Reply in Opp'n to Mot. for Dismissal ("Pl.'s Opp'n") at 9-10, ECF No. 22.  "[S]tanding is not dispensed in gross."  *Lewis v. Casey*, 518 U.S. 343, 358, n. 6 (1996).  "Rather, 'a plaintiff must demonstrate standing for each claim he seeks to press' and 'for each form of relief' that is sought."  *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008).  Therefore, a plaintiff "who has been subject to injurious conduct of one kind" does not "possess by virtue of that injury the necessary stake in litigating conduct of another kind . . . to which he has not been subject."  *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 351-53 (2006) (rejecting "commutative" theory of standing whereby standing as to one claim would suffice for all claims arising from the same nucleus of operative facts).

Plaintiff's alleged informational injuries, including purported "nonpayment of court fees, hiding material subject to FOIA," and so-called "WNP-136 tactics," Pl.'s Opp'n at 9, all stem from the Government's purported policy of nuclear ambiguity, which plaintiff challenges in his second claim.  They have nothing to do with plaintiff's first claim.  Plaintiff does not allege (nor could he) that these informational injuries were caused by the President's failure to make a determination under § 2799aa-1 or by the Government's provision of foreign aid to Israel.

Accordingly, these alleged injuries cannot supply standing for plaintiff's first claim. *See, e.g.*, *DaimlerChrysler*, 547 U.S. at 353 ("Plaintiffs failed to establish Article III injury with respect to their *state* taxes, and even if they did do so with respect to their *municipal* taxes, that injury does not entitle them to seek a remedy as to the state taxes.").[1]

Because plaintiff has failed to allege any particularized injury resulting from the President's failure to make a determination that Israel has engaged in conduct specified in § 2799aa-1 or from the Government's provision of foreign assistance to Israel, he lacks standing to raise his first claim and it should be dismissed.

**B.     Plaintiff's First Claim Fails To State A Claim Upon Which Relief May Be Granted**

Defendants showed in their opening brief that plaintiff's first claim also fails as a matter of law. *See* Defs.' MTD at 16-22. As to plaintiff's claim against the President, none of the statutory or constitutional provisions on which plaintiff relies (the Administrative Procedure Act ("APA"), § 2799aa-1, the Mandamus Act, or the Take Care Clause of the U.S. Constitution) provide plaintiff with a cause of action against the President. And, as to plaintiff's claim against the Secretaries of Defense and the Treasury, which is brought only under the APA, *see* Am. Compl. ¶¶ 11, 13, plaintiff cannot demonstrate that the provision of foreign aid to Israel is contrary to law, because the President has not determined that Israel engaged in conduct specified in § 2799aa-1(a)(1) and/or (b)(1). None of the arguments plaintiff makes in his opposition demonstrate otherwise.

Plaintiff maintains that "[t]he President's actions can be redressed by . . . enjoining agencies from carrying out unlawful actions." Pl.'s Opp'n at 11. But this does not mean, as

---

[1] As explained below, plaintiff's alleged informational injuries also do not establish standing for his second claim.

plaintiff claims, that the President's "actions, and failure to act, are reviewable" under the APA. *Id*. The Supreme Court has made clear that the APA does not provide a cause of action against the President because the President is not an "agency" within the meaning of the statute; thus, the APA does not permit courts to review the President's actions, or failures to act. *See Dalton v. Specter*, 511 U.S. 462, 470 (1994); *Franklin v. Massachusetts*, 505 U.S. 788, 800-01 (1992). The sole case on which plaintiff relies, *Texas v. United States*, 809 F.3d 134 (5th Cir. 2015), is not to the contrary. *See* Pl.'s Opp'n at 11-12. The APA claim in that case was brought against the Secretary of the Department of Homeland Security, not the President (who was not even a defendant). *See Texas v. United States*, 86 F. Supp. 3d 591, 607 (S.D. Tex. 2015).

Plaintiff notes that he also named the Secretaries of Defense and the Treasury as defendants with respect to his APA claim. *See* Pl.'s Opp'n at 12. But, as defendants demonstrated in their opening brief, plaintiff's APA claim against the Secretaries fails for a different reason. *See* Defs.' MTD at 21-22. Plaintiff concedes that the President has never made a determination under § 2799aa-1(a)(1) or (b)(1) that Israel has engaged in conduct specified in the statute. *See* Am. Compl. ¶ 24. Because no such determination has been made, plaintiff cannot show that the provision of foreign aid to Israel is prohibited by § 2799aa-1, as required to state a claim that agency action is "not in accordance with law" under the APA.[2] 5 U.S.C. § 706(2)(A). Thus, plaintiff's APA claim against the President should be dismissed because plaintiff lacks a cause of action, and his APA claim against the Secretaries of Defense and the Treasury should be dismissed because it does not state a claim upon which relief may be granted.

---

[2] Plaintiff's allegation that "[t]he Carter Administration concluded that Israel and Apartheid South Africa conducted a joint nuclear test in 1979," Pl.'s Opp'n at 19, does not equate to a determination by the President under § 2799aa-1(a)(1) and/or (b)(1). Indeed, the crux of plaintiff's claim is that no President has ever made such a determination. *See* Am. Compl. ¶ 24.

Plaintiff's claim against the President cannot proceed under § 2799aa-1, the Mandamus Act, or the Take Care Clause either.  As to § 2799aa-1, defendants showed in their opening brief that the statute does not contain an express (or even an implied) cause of action, as required to subject the President's performance of his statutory duties to judicial review.  *See* Defs.' MTD at 17-19.  Plaintiff does not dispute this fact and instead refers back to the APA, which, as explained above, does not provide an avenue for plaintiff's claim.  *See* Pl.'s Opp'n at 12-13.

As to the Mandamus Act, defendants demonstrated that mandamus is not available because the President does not owe plaintiff a clear nondiscretionary duty to determine that Israel has engaged in the conduct specified in § 2799aa-1 and plaintiff does not have a clear right to such relief.  *See* Defs.' MTD at 19-20.  Although plaintiff appears to concede that § 2799aa-1 vests the President with some discretion in determining whether a country has engaged in the specified conduct, he claims that this discretion "becomes a duty" "[w]hen there is a preponderance of evidence" supporting a determination under the statute.  Pl.'s Opp'n at 13. Plaintiff, however, cites nothing to support his novel theory, which, in any event, is contrary to both the plain language of § 2799aa-1 and its legislative history.  The statute expressly states that "the President" is to make "determin[ations]" under § 2799aa-1(a)(1) and (b)(1).  22 U.S.C. § 2799aa-1(a)(1) (restricting the provision of foreign assistance to "any country which *the President determines*" has engaged in specified conduct) (emphasis added); *id*. § 2799aa-1(b)(1) (same).  And the statute leaves it to the President to decide whether, how, and when to make such a determination; what type of evidence to rely on; whether any evidence is credible; and what quantum of proof is sufficient to justify a determination.  The legislative history of the statute, moreover, makes clear that Congress intended that "the determinations under this section . . . be made by the President."  H.R. REP. NO. 103-482, at 264 (1994) (Conf. Rep.), *reprinted in*

1994 U.S.C.C.A.N. 398, 509.  Thus, the President's decision whether or not to make a

determination under § 2799aa-1(a)(1) and/or (b)(1) is the epitome of a discretionary judgment

that cannot be compelled via mandamus.  *See, e.g.*, *Aerotrade, Inc. v. Agency for Int'l Dev.,*

*Dep't of State*, 387 F. Supp. 974, 976-77 (D.D.C. 1974) (concluding mandamus was

"inappropriate" with respect to a similar provision of the Foreign Assistance Act of 1961 because

"the very generality of the statutory language implies . . . discretion in the President to construe

and apply it in particular factual situations"); *Levine v. Farley*, 107 F.2d 186, 191 (D.C. Cir.

1939) (explaining that, in a mandamus action, a court may not "go behind the official findings of

the postal authorities and try the questions of fact all over again").[3]

Finally, as defendants showed in their opening brief, the Take Care Clause does not

furnish citizens with a right to sue to challenge the President's actions or inaction.  *See* Defs.'

MTD at 20-21.  Plaintiff does not cite a single case in which the Take Care Clause was found to

provide a cause of action.  He suggests that *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S.

579 (1952), is such a case, *see* Pl.'s Opp'n at 13-18, 22, but it is not.  *Youngstown* involved a suit

against the Secretary of Commerce under the *Larson-Dugan* doctrine (which preceded enactment

of the APA), not a suit against the President under the Take Care Clause.  *See Youngstown Sheet*

*& Tube Co. v. Sawyer*, 103 F. Supp. 569, 576 (D.D.C. 1952).  The Take Care Clause was

discussed in *Youngstown* as a source of presidential power, not a provision that empowers

---

[3] Contrary to plaintiff's unsupported assertion, the President is not required to "report to Congress" if he "become[s] aware of the possibility" that a country may have engaged in conduct specified in § 2799aa-1(a)(1) or (b)(1).  Pl.'s Opp'n at 11.  There are statutory provisions that require the President to report to Congress when he receives information that a violation of certain other provisions of the Arms Export Control Act may have occurred, *see, e.g.*, 22 U.S.C. § 2753(c)(2), but § 2799aa-1 is not one of them.  *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

private citizens to challenge the exercise of presidential authority.  *See Youngstown*, 343 U.S. at 587.[4]

   For these reasons, plaintiff has no cause of action against the President and his allegations against the Secretaries of Defense and the Treasury fail as a matter of law.  Plaintiff's first claim, therefore, should be dismissed for the additional reason that it does not state a claim upon which relief may be granted.

   ## C.      The Political Question Doctrine Bars Plaintiff's First Claim

   Defendants demonstrated in their opening brief that plaintiff's first claim should be dismissed for the additional reason that it presents a non-justiciable political question.  *See* Defs.' MTD at 22-25.  Plaintiff asks the Court to second-guess the President's exercise of exclusive discretion to determine whether Israel has engaged in conduct specified in § 2799aa-1, and thus, whether Israel may continue to receive U.S. foreign assistance without invocation of the waiver provisions of the statute.  But such policy determinations about the provision of foreign aid are political questions for the Executive and Legislative Branches.  And the statute at issue calls for judgments to be made by the President, taking into account complex and evolving diplomatic and national security circumstances.  It does not provide judicially discoverable or manageable standards for the Court to use in evaluating the President's determinations (or lack thereof).  Finally, if the Court were to second-guess the President's determinations in this area, it would "express[] lack of [] respect" for the "coordinate branches of government" and could potentially

---

[4] The three categories discussed in Justice Jackson's concurrence in *Youngstown* are not relevant to the cause of action question at issue here.  Defendants note, however, that, contrary to plaintiff's contention, *see* Pl.'s Opp'n at 16-18, the President's authority to make determinations under § 2799aa-1(a)(1) and (b)(1) fits squarely within the first category—where the President's authority is "at its maximum"—because Congress specified in the statute that such determinations are to be made by the President, *Youngstown*, 343 U.S. at 635 (Jackson, J., concurring).

result in "embarrassment from multifarious pronouncements by various departments on one question." *Baker v. Carr*, 369 U.S. 186, 217 (1962).

Plaintiff does not grapple with these concerns. He contends only that his first claim is "similar in nature to" the claim asserted in *Texas v. United States*, 809 F.3d 134, Pl.'s Opp'n at 19, but it is not. *Texas* involved a run-of-the-mill challenge under the APA to an agency memorandum on the enforcement of certain immigration laws. 809 F.3d at 146-47. Plaintiff's first claim here, in contrast, asks this Court to second-guess a policy determination (or lack thereof) by the President relating to national security and the provision of foreign aid that Congress has explicitly stated the President alone has authority to make. Courts have routinely held that such questions are not justiciable under the political question doctrine. *See* Defs.' MTD at 23-25 (citing cases).[5]

Furthermore, even if the factors discussed above (and in defendants' opening brief) were insufficient to render plaintiff's claim a non-justiciable political question, they at least would warrant the withholding of the discretionary relief plaintiff seeks here. *See* Defs.' MTD at 25-26. As defendants highlighted in their opening brief, the D.C. Circuit in *Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 208 (D.C. Cir. 1985), held that "it would be an abuse of [] discretion to provide discretionary relief" in a case like this one involving sensitive foreign affairs and national security issues. Plaintiff does not address *Sanchez-Espinoza* in his opposition, but that case provides yet another reason for dismissing plaintiff's first claim.

---

[5] Defendants have not argued that plaintiff's second claim, which is arguably similar to the claim in *Texas*, is a political question. Plaintiff's second claim should be dismissed for other reasons discussed below and in defendants' opening brief.

## II.      THE COURT SHOULD DISMISS PLAINTIFF'S SECOND CLAIM

The second claim raised in plaintiff's amended complaint sought to challenge the Government's alleged "systemic" policy of "nuclear ambiguity" under Executive Order 13526 and the APA.  Am. Compl. ¶¶ 10, 34.  Since defendants demonstrated that such a claim is not cognizable, *see* Defs.' MTD at 27-33, plaintiff now disclaims any attempt to mount a systemic attack on the alleged nuclear ambiguity policy and instead limits his challenge to Department of Energy Classification Bulletin WNP-136, *see* Pl.'s Opp'n at 25.  The Court, therefore, should dismiss as conceded all portions of plaintiff's second claim that challenge alleged conduct other than the issuance of Classification Bulletin WNP-136, including, among others, plaintiff's allegations that defendants delayed or "refus[ed] to process" FOIA and MDR requests, "den[ied] releasable information," and "charg[ed] exorbitant search/reproduction or other fees" for FOIA requests.  Am. Compl. ¶¶ 14, 49.  *See Cooper v. Farmers New Century Ins. Co.*, 607 F. Supp. 2d 175, 180 (D.D.C. 2009); *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

Plaintiff's remaining challenge to Department of Energy Classification Bulletin WNP-136 also should be dismissed for the reasons explained in defendants' opening brief and below.

### A.      Plaintiff Lacks Standing To Challenge The Classification Bulletin

Defendants demonstrated in their opening brief that plaintiff lacks standing to challenge Department of Energy Classification Bulletin WNP-136 because plaintiff has not been personally injured by the classification guide, which merely provides internal guidance to agency employees on the protection of sensitive information.  *See* Defs.' MTD at 34-35.  Plaintiff

speculates in his opposition that the Classification Bulletin has been used by the Department of

Energy to deny him access to information that is releasable under FOIA.  *See* Pl.'s Opp'n at 27-

28.  Although an alleged informational injury may be sufficient for purposes of a FOIA claim

(which plaintiff does not assert here), it is not sufficient to challenge the Classification Bulletin

under the APA.  *See Common Cause v. Fed. Election Comm'n*, 108 F.3d 413, 418 (D.C. Cir.

1997) (explaining that informational injuries can support standing only where "the information

denied is both useful . . . and required by Congress to be disclosed"); *id.* (a plaintiff cannot

establish injury in fact "merely by alleging that he has been deprived of the knowledge as to

whether a violation of the law has occurred").  Moreover, even if plaintiff's alleged

informational injury were sufficient for purposes of his APA claim, he provides nothing more

than speculation to show that the Department of Energy relied on Classification Bulletin WNP-

136 to withhold information from him in response to any FOIA request.  Indeed, plaintiff does

not indicate which FOIA response(s) he believes involved application of the Classification

Bulletin.  Plaintiff's "[s]peculative inferences" are not compatible with "fair[]" causation tracing.

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 44-45 (1976).  Accordingly, plaintiff's

challenge to the Classification Bulletin should be dismissed for lack of standing.

      **B.**      **The Classification Bulletin Is Not Final Agency Action Or Ripe For Review, And Plaintiff Has An Adequate Remedy Under FOIA**

Defendants showed in their opening brief that plaintiff's challenge to the Classification

Bulletin also should be dismissed for three additional, related (but independent) reasons: (1) the

Classification Bulletin is not final agency action; (2) it is not ripe for review; and (3) plaintiff has

an adequate remedy under FOIA.  *See* Defs.' MTD at 30-33, 35-37 & n.12.  The Classification

Bulletin is not an agency action subject to judicial review because it does not determine the

rights of, or create any legal consequences for, plaintiff.  *See Bennett v. Spear*, 520 U.S. 154, 178

(1997).  It is merely an internal guidance document for agency employees who act as derivative classifiers about the type of information that should be classified and the level and duration of classification.  *See* Exec. Order No. 13526, § 6.1(h), 75 Fed. Reg. 707 (Jan. 5, 2010); 32 C.F.R. § 2001.15(b).  Such internal guidance also is not ripe for review—nor does it constitute final agency action—until it has been applied by the agency to withhold specific documents or information in response to a FOIA request.  *See, e.g.*, *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990); *DRG Funding Corp. v. Sec'y of Hous. & Urban Dev.*, 76 F.3d 1212, 1214-15 (D.C. Cir. 1996).  And even then, plaintiff's remedy is not under the APA; it is under FOIA.  *See Feinman v. FBI*, 713 F. Supp. 2d 70, 76-78 (D.D.C. 2010).

Plaintiff's only response to these arguments is that he must be permitted to challenge Classification Bulletin WNP-136 now and under the APA because the Classification Bulletin somehow "supersedes and supplants FOIA."  Pl.'s Opp'n at 23; *see id*. at 6, 18, 25-26, 28.  That is patently meritless.  Executive agency guidance does not supersede a federal statute.  *See, e.g.*, *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984); *Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 94-95 (D.C. Cir. 1997).  And, as defendants have repeatedly stated, plaintiff can challenge the Government's withholding of information in response to a FOIA request—whether that information was withheld because it is classified or otherwise.  *See* Defs.' MTD at 30-33, 37, 38 n.13.  The availability of this judicial review process—which plaintiff appears to understand based on his prior filing of numerous FOIA lawsuits, *see* Am. Compl. ¶¶ 27, 56, 62)—precludes plaintiff's facial APA challenge to Classification Bulletin WNP-136.[6]

---

[6] Despite plaintiff's allegations about the content of Classification Bulletin WNP-136, plaintiff does not actually know what the Classification Bulletin says because the Department of Energy withheld most of it under FOIA Exemptions 1 and 7(E) when responding to plaintiff's FOIA

**C.    Plaintiff's Challenge To The Classification Bulletin Fails To State A Claim Upon Which Relief May Be Granted**

Finally, defendants showed in their opening brief that plaintiff's challenge to Classification Bulletin WNP-136 should be dismissed as a matter of law for failure to state a claim.  *See* Defs.' MTD at 37-40.  Plaintiff claims that the Classification Bulletin is contrary to Executive Order 13526, which authorizes the classification of information that meets certain criteria.  But the Executive Order does not establish binding standards that are enforceable through the APA; the Executive Order makes clear that it "does not create any right or benefit, substantive or procedural, enforceable at law by a party against the United States, [or its agencies]."  Exec. Order No. 13526, § 6.2(d).  In addition, the contours of classification guides like Department of Energy Classification Bulletin WNP-136—which describe what information must be protected for national security reasons—are committed to agency discretion and thus are not reviewable under the APA.  *See* Defs.' MTD at 38-40.

Plaintiff does not dispute these points.  Instead, he argues only that Classification Bulletin WNP-136 is not a classification guide because it does not "apply to many countries[] and many nuclear programs."  Pl.'s Opp'n at 23; *see id.* at 29.  But there is no requirement that a classification guide apply to information about multiple countries or about every aspect of a particular topic.  A classification guide is merely "a documentary form of classification guidance issued by an original classification authority that identifies the elements of information regarding a specific subject that must be classified and establishes the level and duration of classification

---

request—a decision plaintiff does not challenge under FOIA.  *See* Am. Compl., Ex. 6.  In his opposition, plaintiff asks the Court to order the Department of Energy to "ma[k]e" the Classification Bulletin "public, along with the institutional history of its agency champions, their names and all related information about how and why it was developed," or to review the Classification Bulletin *in camera*.  Pl.'s Opp'n at 23, 27, 29.  The APA, however, does not authorize such relief.  *See* 5 U.S.C. § 706.

for each such element."  Exec. Order No. 13526, § 6.1(h); *see also id*. § 6.1(g) ("'Classification guidance' means any instruction or source that prescribes the classification of specific information.").  The scope of any particular classification guide is committed to an agency's discretion.  Accordingly, plaintiff's substantive APA claim fails to state a claim upon which relief may be granted.

In addition to the substantive APA claim plaintiff raised in his amended complaint, he appears to raise a new procedural APA claim in his opposition.  *See* Pl.'s Opp'n at 22-25, 29. Even if the Court were to consider a claim not raised in the amended complaint, plaintiff's procedural APA claim should be dismissed for the many reasons explained above, *see supra* pp. 9-11, as well as because it fails as a matter of law.

The notice-and-comment procedures of the APA do not apply to every agency pronouncement.  In particular, the APA explicitly exempts "interpretative rules" and "general statements of policy" from its procedural requirements.  5 U.S.C. § 553(b)(3)(A).  Unlike legislative (or substantive) rules, interpretative rules and general statements of policy do not have the "force and effect of law."  *Am. Mining Cong. v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1109 (D.C. Cir. 1993).

A legislative rule "*modifies* or *adds* to a legal norm based on [an] agency's *own authority*."  *Syncor*, 127 F.3d at 95.  It purports to—and in fact does—"impose legally binding obligations or prohibitions on regulated parties."  *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 251 (D.C. Cir. 2014).  In contrast, interpretative rules merely reflect an agency's construction of a law.  *Syncor*, 127 F.3d at 94.  In issuing an interpretative rule, an agency "does not purport to modify [a legal] norm" (*i.e.*, to engage in lawmaking); it merely interprets a pre-existing law, whether a statute, regulation, or Executive Order.  *Id*.  Similarly, a policy statement "does not

seek to impose . . . a legal norm;" it "merely represents an agency position," subject to change, regarding how the agency "will treat . . . the governing legal norm." *Id.*

Classification guides, like Department of Energy Classification Bulletin WNP-136, are not legislative rules, because they do not "impose legally binding obligations or prohibitions on [any] regulated parties." *Nat'l Mining Ass'n*, 758 F.3d at 251. Classification guides are, at most, interpretative rules or policy statements. They are internal documents that provide guidance to agency employees about the type of information that should be classified and the level and duration of such classification. Exec. Order No. 13526, § 6.1(h); 32 C.F.R. § 2001.15(b). They represent an original classification authority's view regarding whether disclosure of particular information "reasonably could be expected to result in damage to the national security." Exec. Order No. 13526, § 1.1(a)(4). But the guide itself sets no binding policy on any regulated party.[7] Notably, and as pertinent here, in response to requests for information under FOIA by private citizens such as plaintiff, classification guides may describe the basis for withholding information that is classified. But an agency's decision to withhold information from a document as classified is a distinct action that courts can review under FOIA, regardless of whether a classification guide specified that the information should be classified. *See Larson v. Dep't of State*, 565 F.3d 857, 864-65 (D.C. Cir. 2009).

---

[7] Plaintiff suggests that the Classification Bulletin could not be an interpretative rule because it purportedly "bind[s] agency officials." Pl.'s Opp'n at 22. But interpretative rules can bind agency employees. *See, e.g.*, *Splane v. West*, 216 F.3d 1058, 1064 (Fed. Cir. 2000). The point of an interpretative rule is to set forth the agency's view of what a particular law means, and thus, it would not be surprising if such a rule instructed agency employees to act in accordance with the agency's view. *See id.* (interpretative rules are "binding on agency officials insofar as any directive by an agency head must be followed by agency employees"). Unlike legislative rules, however, interpretative rules are not binding on courts (or regulated parties, separate and apart from the laws they interpret). *See id.* (explaining that the requirement that a legislative rule have the "force and effect of law" refers to its "binding effect . . . on tribunals *outside* the agency, not on the agency itself"); *see also Erringer v. Thompson*, 371 F.3d 625, 631 (9th Cir. 2004).

Courts have routinely held that documents containing agency instructions to agency employees are not legislative rules. *See, e.g.*, *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981) (concluding that "handbook for internal use by thousands of [Social Security Administration] employees" was not a legislative rule because it "ha[d] no legal force"); *Gatter v. Nimmo*, 672 F.2d 343, 347 (3d Cir. 1982) (holding that "internal VA publications" that provided guidance to agency's employees were not legislative rules because they had "never been published in the Federal Register" and had "never been intended for or used by anyone other than VA employees"); *Brennan v. Ace Hardware Corp.*, 495 F.2d 368, 376 (8th Cir. 1974) (concluding "handbooks" were not legislative rules because they "were not published in the Federal Register, were not intended by any government officials to have the force and effect of law, and were only guidelines for government personnel"). The same is true of Classification Bulletin WNP-136, which serves a similar purpose in guiding the actions of agency employees. Because the Classification Bulletin is not a legislative rule subject to notice-and-comment procedures, plaintiff's newly minted procedural APA claim, if allowed, would fail to state a claim upon which relief may be granted and should be dismissed.[8]

## CONCLUSION

The Court should dismiss this case in its entirety.

---

[8] *Professionals and Patients for Customized Care v. Shalala*, 56 F.3d 592 (5th Cir. 1995), on which plaintiff relies, *see* Pl.'s Opp'n at 23, is of no help to him because the court determined that the internal guidance at issue there also was not a legislative rule. *Id.* at 601-02.

Respectfully submitted this 10th day of January, 2017,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

CHANNING D. PHILLIPS
United States Attorney

ANTHONY J. COPPOLINO
Deputy Director

 s/ Michelle R. Bennett_____
MICHELLE R. BENNETT (CO Bar No. 37050)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W. Room 7310
Washington, D.C. 20530
Tel: (202) 305-8902
Fax: (202) 616-8470
Email: michelle.bennett@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2017, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which sent notice of such filing to all represented

parties.  I further certify that on the same day, I emailed a copy of the foregoing to the following

*pro se* party:

> GRANT F. SMITH
> IRmep
> P.O. Box 32041
> Washington, DC  20007
> gsmith@IRmep.org

> s/ Michelle R. Bennett
> MICHELLE R. BENNETT

17