UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GRANT F. SMITH, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 16-cv-1610 (TSC) |
| UNITED STATES OF AMERICA, *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff Grant F. Smith is a public interest researcher and founder of the Institute for Research: Middle Eastern Policy, Inc. ("the Institute"). He filed this *pro se* lawsuit against the United States of America; then-President Barack Obama, and former Obama administration officials John Brennan, director of the Central Intelligence Agency ("CIA"); Ashton Carter, Secretary of Defense; John Kerry, Secretary of State; Jacob Lew, Secretary of the Treasury; Ernest Moniz, Secretary of Energy; and Penny Pritzker, Secretary of Commerce. Plaintiff's Amended Complaint alleges the administration violated the Administrative Procedure Act by failing to enforce section 102(a) of the Arms Export Control Act of 1961, as amended, 22 U.S.C. § 2799aa-1(a), which prohibits the United States from sending foreign aid to any country that the President determines has engaged in certain conduct related to nuclear weapons and technology. Plaintiff also alleges violations of the "Take Care" Clause found in Article II of the Constitution, which states that the President "shall take Care that the Laws be faithfully executed;" and alleges that Executive Order 13526, signed by President Obama on January 5, 2010, which sets out a system for classifying and declassifying information related to national security, violates the APA.

1

Defendants have moved to dismiss the complaint in its entirety. For the reasons stated below, the court will GRANT Defendants' motion. Plaintiff also filed a motion for a preliminary injunction on November 28, 2016, which the court will DENY as moot for the same reasons as the court's dismissal of the Complaint.

## I. BACKGROUND

The amended Arms Export Control Act of 1961 states that Foreign Assistance Act funds shall not be made available to provide economic assistance or military assistance "to any country which the President determines," since 1977, either "delivers nuclear reprocessing equipment, materials, or technology to any other country," or "is a non-nuclear-weapon state which, [since 1985], exports illegally (or attempts to export illegally) from the United States any material, equipment, or technology which would contribute significantly to the ability of such country to manufacture a nuclear explosive device, if the President determines that the material, equipment, or technology was to be used by such country in the manufacture of a nuclear explosive device." 22 U.S.C. § 2799aa-1(a). Plaintiff claims that Defendants have been violating the Arms Export Control Act[1] since the 1970s. (Am. Compl. ¶ 20, ECF No. 17). He states that departments including Treasury, Defense, State, and Commerce "have acted unlawfully and in concert to help thwart" the Arms Export Control Act. (*Id.*).

Plaintiff claims that Defendants' actions violate both the Administrative Procedure Act ("APA") and the Take Care Clause, and that Defendants also prohibit "the release of official government information about Israel's nuclear weapons program," resulting in "gagging and prosecuting federal officials and contractors who publicly acknowledge Israel's nuclear weapons program," and imposing costs on researchers and journalists who seek information. (*Id.* ¶ 6).

---

[1] Plaintiff misstates that 22 U.S.C. § 2799aa-1 contains amendments of the Foreign Aid Act; it refers to the Arms Export Control Act.

Plaintiff also alleges "violations of sunshine laws" (*Id*. ¶ 7), asserts that the CIA "thwart[s] the release of information about the Israeli nuclear weapons programs;" and that the Department of Defense also violates the APA by delaying and preventing release of information and "punish[ing] outside FOIA [Freedom of Information Act] requesters through the non-payment of court-ordered settlements." (*Id*. ¶¶ 10–11). Plaintiff claims that the Secretary of the Treasury violates the APA "through the transfer of taxpayer funds to an ineligible recipient." (*Id*. ¶ 13). He alleges similar violations on the part of the Departments of Energy and Commerce, and sues the President under 28 U.S. Code § 1361's mandamus provision, asking the court to compel the President to follow Plaintiff's interpretation of the Arms Export Control Act. (*Id*. ¶¶ 14, 15, 16).

Defendants argue that Plaintiff's APA claim regarding § 2799aa-1 should be dismissed because Plaintiff lacks standing; Plaintiff fails to state a claim against the President, and lacks a cause of action under the APA, § 2799aa-1, the Mandamus Act, or the Take Care Clause; Plaintiff fails to state a claim against the Secretaries of Defense and The Treasury; the suit it is barred by the political question doctrine, and the court should decline to provide discretionary relief if the claim were in fact justiciable. Defendants argue that Plaintiff's claim challenging the government's policies regarding provision of information and Executive Order 13526 should be dismissed because there is no cause of action arising from the Executive Order nor the APA; Plaintiff lacks standing to challenge the Order; his challenge to the Order is not ripe; and his challenge fails to state a claim upon which relief could be granted.

## II.     LEGAL STANDARD

In evaluating a motion to dismiss under Rule 12(b)(1), the court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins.*

*Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). Nevertheless, "'the court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.'" *Disner v. United States*, 888 F. Supp. 2d 83, 87 (D.D.C. 2012) (quoting *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006)). Further, under Rule 12(b)(1), the court "is not limited to the allegations of the complaint," *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987), and "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

Additionally, federal courts are vested with the power of judicial review extending only to "Cases" and "Controversies." U.S. Const. art. III, § 2. Courts have, in interpreting this limitation on judicial power, "developed a series of principles termed 'justiciability doctrines,' among which are standing ripeness, mootness, and the political question doctrine." *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996) (citing *Allen v. Wright*, 468 U.S. 737, 750 (1984)).

While courts construe *pro se* filings liberally, *see Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999), the non-justiciability of the case and the absence of jurisdiction cannot be overcome by liberal construction of the complaint in this instance. A *pro se* complaint must still set forth factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Here, Plaintiff's complaint does not suggest even a speculative right to relief.

III.   ANALYSIS

A. Standing

This court's jurisdiction and the justiciability of this case depend on Plaintiff's standing to sue.  Standing requires, at a minimum, that the Plaintiff have "suffered an 'injury in fact,'" that was or is "actual or imminent, not 'conjectural' or 'hypothetical;'" that there be a causal relationship between the injury and the basis for the claim; and that it be "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision'." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (quoting *Allen v. Wright*, 468 U.S. 737, 756 (1984); *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990); *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 38 (1976)).

Standing requires that the injury be "particularized," that is, it "must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).  Plaintiff's Amended Complaint indicates that "all Americans who attempt to overcome ['nuclear ambiguity'] and expose the truth" suffer the same injury from the conduct he describes.  (Am. Compl. ¶ 72).  He asks the court to "offer redress to [his] past and future injuries and broader relief to American taxpayers who have suffered grave and ongoing harm."  (*Id.* ¶ 7).  The only specific injuries Plaintiff alleges he has personally suffered are that Defendants' "unlawful applications of 'nuclear ambiguity' have cost Plaintiff $12,795 in FOIA administrative and litigation costs and are likely to generate further injury in the near future," (*id.* ¶ 62); and that Defendants' conduct will "extend injury to [Plaintiff's] information gathering and delivery."  (*Id.* ¶ 66).  He asserts that "[t]here is a direct causal connection between the defendants' illegal nuclear ambiguity policy on the Israeli nuclear weapons program and financial injuries to the Plaintiff."  (*Id.* ¶ 58).  Plaintiff also claims that "[i]ndirect injuries" in the form of "constant

5

blowback" against the United States result from U.S. support for Israel and the "continued plight of the Palestinians." (*Id.* ¶ 67).

To the extent that Plaintiff alleges injuries suffered by all American taxpayers, those injuries do not provide him with constitutional standing, nor do they give rise to a claim which this court has jurisdiction to address. Payment of taxes "is generally not enough to establish standing to challenge an action taken by the Federal Government." *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 593 (2007). The Supreme Court recognized a "narrow exception" to the unavailability of taxpayer standing in *Flast v. Cohen*, 392 U.S. 83, 88 (1968), finding that taxpayer standing is available "to challenge a law authorizing the use of federal funds in a way that allegedly violates the Establishment Clause." *Hein*, 551 U.S. at 593. Plaintiff has not alleged any Establishment Clause violation; therefore, general injuries that Plaintiff suffers that arise from his status as an American taxpayer are not cognizable.

Neither do Plaintiff's FOIA litigation costs provide him with standing to challenge the Defendants' compliance with the Administrative Procedure Act and Arms Export Control Act, the Take Care Clause, or Executive Order 13526. Plaintiff's purported APA and Arms Export Control Act claim bears no relationship to his FOIA litigation costs, and does not meet the second or third prong of standing. Even if Defendants were ordered, as Plaintiff requests, to cease providing aid to Israel, Plaintiff would nevertheless be required to obtain any records or documents related to the government's actions with regard to Israel through FOIA. The cost of FOIA litigation would not be redressed by the relief Plaintiff seeks for his APA claim based on the Arms Export Control Act. Similarly, Plaintiff articulates no individualized injury that might plausibly relate to his claim that the President violated the Take Care Clause by sending foreign aid to Israel. "Indirect injuries" in the form of anti-American sentiment around the globe arising

out of sympathy for the Palestinian people are neither particularized nor concrete or imminent.

Plaintiff's claims regarding Executive Order 13526 appear to bear slightly more of a relationship to his "financial injuries," because he intends to challenge information classification that could impact his success in seeking government records. But the availability of an adequate remedy under FOIA itself precludes any relief under the APA. *See*, *e.g.*, *Feinman v. FBI*, 713 F. Supp. 2d 70, 76 (D.D.C. 2010). Plaintiff may seek compensation for his FOIA fees in the lawsuits he brought pursuant to FOIA. To the extent that Plaintiff alleges informational injury— harm resulting from his inability to access the information he seeks—based on Executive Order 13526, he must seek redress under FOIA and not the APA. *Citizens for Responsibility & Ethics in Washington v. United States Dep't of Justice*, No. 16-5110, 2017 WL 412626 at *7–8 (D.C. Cir. Jan. 31, 2017) (explaining that "APA section 704 limits review under that statute to agency actions 'for which there is no other adequate remedy in a court'" and finding no APA review of FOIA "reading room" violations).

In sum, Plaintiff has not articulated any injury that meets the three requirements for standing, and therefore his claims are not justiciable. The court need not reach any of Defendants' additional arguments for dismissal.

### IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss will be granted by separate order, and Plaintiff's motion for a preliminary injunction will be denied as moot.

A corresponding order will issue separately.

Date: February 27, 2017

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge